UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JOHN H. WHITE,

                              Plaintiff,

          v.                                                    9:12-CV-0986
                                                                (NAM/RFT)

JEFFREY CLARK, et al.,

                              Defendants.

_____

APPEARANCES:

JOHN H. WHITE
08-A-3366
Plaintiff, pro se
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

NORMAN A. MORDUE, United States District Judge

## DECISION AND ORDER

## I.    INTRODUCTION

          The Clerk has sent to the Court a pro se civil rights complaint filed by plaintiff John H.

White.  Dkt. No. 1 ("Compl.").  Plaintiff, who is currently incarcerated at Upstate Correctional

Facility, seeks leave to proceed with this action in forma pauperis.  Dkt. No. 3 ("IFP

Application").  Plaintiff has also filed several amended complaints (Dkt. Nos. 12, 22, 26);

motions for preliminary injunctive relief (Dkt. Nos. 2, 11); motions to amend his complaint

(Dkt. Nos. 7, 23, 28); a motion for default judgment (Dkt. No. 16); and a request for a

teleconference hearing to address various issues (Dkt. No. 27).

## II.    DISCUSSION

### A.    In Forma Pauperis Application

Upon review of plaintiff's IFP Application (Dkt. No. 3), the Court finds that plaintiff has demonstrated sufficient economic need and may commence this action without prepayment of the filing fee.

### B.    Initial Screening

Having found that plaintiff meets the financial criteria for commencing this action in forma pauperis, and because plaintiff seeks relief from a governmental entity or an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[1] Thus, even if a plaintiff meets the financial criteria to commence an action in forma pauperis, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action in forma pauperis. *See id.*

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any

---

[1] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

In reviewing a pro se complaint, the court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond."  *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted).  Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id*.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citing *Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. Rule Civ. Proc. 8(a)(2)).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).  Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 Fed. App'x 102, 104 (2d Cir. 2009).

    **C.**    **Summary of Plaintiff's Complaint**

Plaintiff includes in his complaint more than thirty defendants, all employees of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* Compl.  Most of the defendants were, at the time period asserted in the complaint, employed at Upstate Correctional Facility ("Upstate C.F.").  The facts are set forth as alleged in plaintiff's complaint.

On December 1, 2010, at the Upstate C.F. Isolation unit, plaintiff was threatened by his cellmate.  Compl. at 4.  Throughout the 6 a.m. to 2 p.m. shift, plaintiff repeatedly asked to be separated from his cellmate because he feared his life was in danger, but no one would assist him, so he remained confined to his cell.  *Id.*  E. LaBarr was distributing mail, and opened plaintiff's cell hatch, whereupon plaintiff "intentionally & knowingly obstructed" the distribution of the mail by placing his left arm though the hatch.  *Id.*  Plaintiff refused to remove his arm.  *Id.*  Plaintiff told LaBarr that he felt threatened by his cellmate, but LaBarr said that neither plaintiff, nor his cellmate, would be removed from the cell "simply because of a irreconcilable conflict which may lead to a little scuffle."  *Id.*  Sergeant Jerry Hebert and correctional officers Clintsman and King arrived at plaintiff's cell.  *Id.*  Plaintiff was told by "<u>all</u>

4

officers" to remove his arm, but plaintiff "knowingly" refused to comply because Sergeant Hebert told him that plaintiff and his cellmate would not be separated because of an irreconcilable difference. *Id.* at 5.  Plaintiff told Sergeant Hebert that, after a prior Tier III hearing, Don Hoag warned plaintiff to avoid further physical altercations, or he would face more severe penalties. *Id.*  Hebert again ordered plaintiff to remove his arm from the hatch; plaintiff refused. *Id.*  Lt. Caron and multiple officers arrived at the cell. *Id.*  Caron directed correctional officer Lamica to record the incident with a hand-held camera. *Id.*  Plaintiff explained to Caron his fear of his cellmate and his desire to avoid a physical altercation, but Caron disregarded this and again ordered plaintiff to remove his arm from the hatch. *Id.* at 5-6.  Plaintiff refused and demanded to be separated from his cellmate because he feared for his life. *Id.* at 6.  Caron told plaintiff that unless plaintiff removed his arm, he had been authorized to allow correctional officers to beat plaintiff's arm with batons. *Id.*  Plaintiff finally removed his arm. *Id.*  Defendants Rock, Uhler, Lira, and Otis, failed "to remedy lack of sufficient security intervention" inside double bunk cells. *Id.* at 22.

After the officers left the cell, plaintiff told his cellmate that he did not wish to fight, but that he would "get removed instantly by alleging a suicide attempt." Compl. at 7.  After plaintiff did so, correctional officer King contacted Sergeant Hebert. *Id.*  Plaintiff was escorted to the medical infirmary by multiple officers, hand-cuffed and chained at the waist, and monitored with a hand-held camera until he reached the infirmary. *Id.* at 7-8.  Plaintiff was stripped, examined, and given a suicide smock. *Id.* at 8.  Then the door was locked and the hand-held camera was turned off. *Id.*  Later that day, Caron arrived and told plaintiff that because plaintiff gave his officers a hard time, he "would be getting [his] ass whipped tonight." *Id.*

About thirty minutes later, correctional officers Clark, Stockwell, Richards, Sisto, LeClair, and Conto, entered plaintiff's room and beat him.  Compl. at 8.  R.N. Smith and R.N. Rushford watched the assault, which lasted over fifteen minutes.  *Id.*  After the assault, the correctional officers threatened plaintiff and told him to stop writing up officers and giving them a hard time.  *Id.* at 9.  After the officers left the room, plaintiff requested medical attention, which was denied.  *Id.*  Plaintiff was told to stop complaining or he would get another "ass whopping."  *Id.*  Shortly thereafter, plaintiff was beaten by correctional officers Fournier, Dishaw, Carr, and King. at the direction of Clark, who told them not to hit plaintiff's face.  *Id.* at 10.  The correctional officers who assaulted plaintiff conspired with all of the administrative officials to violate his constitutional rights, and to violate state laws and regulations.  *Id.* at 11-12.

Plaintiff received no medical attention until after the shift had changed, whereupon he received two pain pills.  Compl. at 10.  The following morning, plaintiff was interviewed by OMH Supervisor Kemp, who concluded that plaintiff's suicide threat was merely an attempt to avoid having a cell fight.  *Id.*  Kemp told plaintiff that his cellmate had been relocated and plaintiff should return to his cell.[2]  *Id.*  Plaintiff was escorted back to his cell by correctional officers Gokey and Dobbins, both of whom noticed plaintiff's injuries but failed to assist plaintiff or "report suspicions of battery gang assault."  *Id.* at 11.  Gokey and Dobbins told plaintiff that R.N. Travers wanted to see plaintiff when he returned to his cell, however Travers only looked at plaintiff and said "I just wanted to make sure he's alive."  *Id.*

---

[2]  Kemp is not named as a defendant, and the Court will not consider him to be a defendant. Nonetheless, even if plaintiff intended to name Kemp as a defendant, he fails to state any sort of claim against Kemp.  Kemp's conclusion, that plaintiff's suicide threat was merely a ploy to be separated from his cellmate is confirmed by plaintiff's own allegation that he threatened suicide to be separated from his cellmate.  Moreover, Kemp sent him back to his cell after the cellmate had been transferred elsewhere.

R.N. Smith, R.N. Rushford, R.N. Travers, and Amber Lashway denied plaintiff adequate medical care for the injuries suffered from the aforementioned assaults in deliberate indifference to his serious medical needs. *Id.* at 13-14. Gokey and Dobbins failed to notify area sergeant about plaintiff's gang assault. *Id.* at 22. David Rock and Donald Uhler were deliberately indifferent to plaintiff's serious medical needs because they "failed to respond or initiate an investigation or process complaints or letters forwarded" to them. *Id.*

Plaintiff attempted to use the prison grievance system to solve his problems, but grievance officials, Superintendent Rock, and DOCCS Commissioner Fischer have refused to acknowledge receipt of his grievances. Compl. at 16. Plaintiff wrote letters about the misconduct to Superintendent Rock on December 2 and 4, 2010. *Id.* at 15. Plaintiff also notified staff at the DOCCS' Inspector General's Office and Sergeant Oropallo of the misconduct. *Id.* at 15-16. Additionally, plaintiff's grievances and letters of complaint were destroyed by Gregory, White, and David Rock, which also violated plaintiff's right of access to the courts. *Id.* at 20.

Construed liberally, plaintiff asserts the following claims in violation of his rights under the First, Eighth, and Fourteenth Amendments: (1) defendants LaBarr, King, Clintsman, Sergeant Hebert, Lt. Caron, and John Doe - Z, failed to protect plaintiff by not separating plaintiff and his cellmate when plaintiff told them that he feared for his life, and defendants Rock, Uhler, Lira, and Otis failed to correct this wrongdoing (Compl. at 17-18, 22); (2) defendants Smith and Rushford failed to intervene to protect plaintiff from assault; (*id.* at 20); (3) at the alleged direction of Lt. Caron, defendants Clark, Stockwell, Richards, Conto, LeClair, Sisto, Dishaw, Carr, King, and Fournier, subjected plaintiff to excessive force (*id.* at 8, 10, 19-20); (4) defendants Smith, Rushford, Travers, Lashway, Rock, and Uhler denied

plaintiff medical care in deliberate indifference to his serious medical needs (*id.* at 20-21); (5) plaintiff's ability to file grievances was impeded or his grievances were destroyed, which in turn denied him access to the courts, and his grievances were not adequately investigated (*id.* at 16); and (6) defendants Caron and Travers harassed and verbally abused plaintiff, causing plaintiff emotional distress (*id.* at 18, 21).  Plaintiff seeks monetary damages, as well as injunctive and declaratory relief.  For a complete statement of plaintiff's claims, refer to the complaint.[3]

## D.    Analysis of Plaintiff's Complaint

### 1.  Eighth Amendment Claims

The Eighth Amendment prohibits cruel and unusual punishment which encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society."  *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citations and quotations omitted). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement - the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted

---

[3]  The Court notes that on pages 23-25 of the complaint, plaintiff includes a series of allegations of wrongdoing against various Upstate C.F. staff who are not included as defendants in his complaint.  Compl. at 23-25.  Indeed, plaintiff clearly states that the allegations are intended for an "<u>Anticipated</u> <u>Amended</u> <u>Complaint</u> following the filing of the instant complaint."  *Id.* at 25.  Accordingly, the Court will not consider these allegations to be part of this complaint.

subjectively with "deliberate indifference."  *See Leach v. Dufrain*, 103 F. Supp. 2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (*quoting Wilson v. Seiter*, 501 U.S. 294, 297-98 (1991)); *Waldo v. Goord*, No. 97-CV-1385 (LEK/DRH), 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998). Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Plaintiff alleges multiple violations of his Eighth Amendment rights.

### a.  Failure-to-Protect Claims

Under the Eighth Amendment prison officials are required to take reasonable measures to guarantee the safety of inmates and to protect them from known harm.  *Farmer*, 511 U.S. at 832-33.  In *Farmer*, the Supreme Court set out the two-pronged test that determines when a failure to protect a prison inmate from assault by other inmates rises to the level of a constitutional violation.  First, the prisoner must have been "incarcerated under conditions posing a substantial risk of serious harm."  *Id.* at 834.  Second, the prison official must have shown "deliberate indifference" to the prisoner's safety.  *Id.*  Deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *Hines v. Lacy*, 189 F.3d 460 (2d Cir. 1999).

Plaintiff alleges that defendants LaBarr, King, Clintsman, Sergeant Hebert, Lt. Caron, and John Doe - Z, failed to protect him from danger because, although plaintiff repeatedly told them that he was afraid that he would get into a physical altercation with his cellmate,

they refused to separate him from his cellmate.  These facts, even if true, do not support a

failure-to-protect claim under the Eighth Amendment.  For one thing, 42 U.S.C. § 1997e(e)

provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison,

or other correctional facility, for mental or emotional injury suffered while in custody without a

prior showing of physical injury."  The complaint itself fails to allege that plaintiff suffered any

injury as a result of defendants' failure to separate plaintiff from his cellmate.  Plaintiff's claim

is therefore barred under 42 U.S.C. § 1997e(e).

Here, plaintiff does not plead facts to meet either the objective or subjective

components for stating a failure-to-protect claim.  Apart from his own assertion that he feared

his cellmate, plaintiff has offered no specific information to establish that he was incarcerated

under conditions posing a substantial risk of harm.  *See Hayes v. New York City Dep't of*

*Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (In order to demonstrate such deliberate indifference,

the plaintiff must allege that "he [wa]s incarcerated under conditions posing a substantial risk

of serious harm" and that the prison official had "knowledge that [the] inmate face[d] a

substantial risk of serious harm and ... disregard[ed] that risk by failing to take reasonable

measures to abate the harm.").  Nor does he allege any facts to suggest that the defendants

were deliberately indifferent to his safety.  *Se Morales v. New York State Dep't of Corr.*, 842

F.2d 27, 30 (2d Cir. 1988) (In addition, a failure-to-protect claim requires a showing that

prison officials acted with "deliberate indifference" to the inmate's safety.).  Indeed, plaintiff

does not allege even a single incident wherein he was assaulted, or in any way injured by his

cellmate.  In fact, it appears that plaintiff was separated from his cellmate before any physical

altercation occurred.  Under these circumstances, plaintiff has failed to allege objective facts

demonstrating the existence of a plausible claim of unlawful failure-to-protect on the part of

one or more of these defendants, in violation of the Eighth Amendment. Accordingly, plaintiff's failure-to-protect claim against defendants LaBarr, King, Clintsman, Sergeant Hebert, Lt. Caron, and John Doe - Z is dismissed without prejudice. *See*, e.g., *Dawes v. Walker*, 239 F.3d 489, 494 (2d Cir. 2001) (affirming dismissal of failure-to-protect claim where plaintiff did not allege that he was assaulted or even threatened by other inmates); *Bolton v. Goord*, 992 F. Supp. 604, 627 (S.D.N.Y. 1998) ("Plaintiffs' testimony that they lived in fear of assault from their cellmates is not an objectively serious enough injury to support a claim for damages.").

Additionally, to the extent that plaintiff alleges that defendants Rock, Uhler, Lira, and Otis, failed "to remedy lack of sufficient security intervention" inside double bunk cells, he fails to state a claim. Since the Court has already determined that plaintiff did not allege a failure-to-protect claim with respect to staff's failure to remove him from his double-bunk cell, there is no unconstitutional conduct for which Rock, Uhler, Lira, and Otis, as supervisors, can be held responsible. *See Toole v. Connell*, No. 9:04-CV-0724, Report-Recommendation, 2008 WL 4186334, at *7 (N.D.N.Y. Sep. 10, 2008) (Peebles, M.J.), *adopted*, 2008 WL 4186334, at *1 (Kahn, J.) (supervisory defendant cannot be liable for failing to investigate or correct conduct that has already been found to be not actionable under section 1983); *see also Linares v. Mahunik,* No. 05 Civ. 625 (GLS/RFT), 2006 WL 2595200, at *11 (N.D.N.Y. Sept. 11, 2006) (holding plaintiff could not "sustain a supervisory liability claim as there was no wrong for [supervisor-defendant] to remedy since there [was] no constitutional violation").

Liberally construing plaintiff's complaint, he also alleges that defendants Smith and Rushford, who are nurses, were at the scene when he was assaulted by defendants Clark, Stockwell, Richards, Sisto, LeClair, and Conto, but failed to intervene. Compl. at 8. "Law

11

enforcement officials can be held liable under § 1983 for not intervening in a situation where excessive force is being used by another officer." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988)). However, defendants Smith and Rushford are identified as nurses, and there is nothing to suggest that they have the authority to intervene while correctional officers are using force on an inmate. *See Lewis v. Johnson*, 9:08-CV-0482 (ATB), 2010 WL 3785771, at *8 (N.D.N.Y. Aug. 5, 2010) (Even if present, a nurse lacks the authority to intervene while correction officers use force on an inmate) (citing *Rendely v. Town of Huntington*, No. 2:03-CV-3805, 2006 WL 5217083, at *6 (E.D.N.Y. Aug. 30, 2006) (because defendants were civilian government employees, and thus not law enforcement officials, they had no authority or duty to prevent the police officers from taking plaintiff into custody); *Phoenix v. Reddish*, 175 F. Supp. 2d 215, 220 (D.Conn. 2001) (there is no Supreme Court or Second Circuit authority that imposes an affirmative duty on a non-police state actor to intervene to prevent a police officer from conducting an unlawful search and seizure).

### b. Excessive Force Claims

A plaintiff's constitutional right to be free from cruel and unusual punishment is violated by an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citations and quotations omitted); *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999). The relevant inquiry in deciding excessive force claims against prison officials is whether the force applied was done so in a "good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Whitley*, 475 U.S. at 320-2. Cruel and unusual punishment claims must meet both objective and subjective requirements. *Leach*, 103 F. Supp. 2d at 546 (citation omitted); *Waldo v. Goord*, No. 6:97-CV-1385 (LEK/DRH),

1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998).

The objective prong of the governing test is analyzed by looking at "contemporary standards of decency" and the circumstances surrounding the incident.  *Leach*, 103 F. Supp. 2d at 546; *Waldo*, 1998 WL 713809, at *2.  The subjective element requires a plaintiff show that the defendant acted with a sufficiently culpable state of mind.  *Id.*  The principal inquiry surrounds whether "force was applied in a good-faith effort to maintain discipline or maliciously and sadistically for the very purpose of causing harm."  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Whitley*, 475 U.S. at 321 (*quoting Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Plaintiff alleges that defendants Caron, Clark, Stockwell, Richards, Conto, LeClair, Sisto, Dishaw, Carr, King, and Fournier subjected him to excessive force and/or directed the use of excessive force against plaintiff.   At this early stage of the proceeding, plaintiff has alleged enough to require a response from defendants Caron, Clark, Stockwell, Richards, Conto, LeClair, Sisto, Dishaw, Carr, King, and Fournier to plaintiff's excessive force claim.

### c.  Medical Indifference Claims

To establish a claim for violation of the Eighth Amendment due to inadequate medical care, "a prisoner must allege 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

Plaintiff alleges that defendants Smith, Rushford, Travers, and Lashway denied him adequate medical care in deliberate indifference to the injuries he suffered after he was assaulted on two occasions by correctional officers.  Plaintiff also alleges that David Rock and Donald Uhler were deliberately indifferent to plaintiff's serious medical needs because

they "failed to respond or initiate an investigation or process complaints or letters forwarded" to them.  At this early juncture, plaintiff has alleged enough to require a response from defendants Smith, Rushford, Travers, Lashway, Rock, and Uhler, to his medical indifference claims.

### 2.  Failure to Address Grievances or to Conduct an Investigation and Denial of Access to the Courts

There is no constitutional right of access to the established inmate grievance program. *Davis v. Buffardi*, No. 9:01-CV-0285 (PAM/GJD), 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) ("[p]articipation in an inmate grievance process is not a constitutionally protected right"); *Shell v. Brzezniak*, 365 F. Supp. 2d 362, 369-70 (W.D.N.Y. 2005) ("[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim"); *Cancel v. Goord*, No. 00. CIV. 2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983").   Thus, to the extent that plaintiff alleges that defendants Bellamy, Fischer, Gregory, Rock, and White impeded or destroyed his grievances, he fails to state a claim pursuant to Section 1983.

Moreover, while the Constitution does mandate that inmates be afforded access to the courts, *see Bounds v. Smith*, 430 U.S. 817, 823 (1977), the alleged interference with plaintiff's ability to file grievances does not amount to interference with the right of access to the courts, since under the Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104-134, 110 Stat. 1321 (1996), a plaintiff whose access to the grievance process has been hindered or foiled by actions of prison officials are excused from the PLRA's exhaustion

14

requirement and permitted to file suit without having completed that process.  *See Hemphill v. New York*, 380 F.3d 680, 686-91 (2d Cir. 2004).  Plaintiff fails to state a denial of access to the courts claim.

Broadly construed, plaintiff's complaint may also allege that various defendants violated his constitutional rights by failing to conduct a thorough investigation of the incidents of wrongdoing against plaintiff.  However, prisoners do not have a due process right to a thorough investigation of grievances.  *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 341-42 (S.D.N.Y. 2003); *see also DeShaney v. Winnebego Soc. Servs.*, 489 U.S. 189, 196 (1989) (The Due Process Clause confers no right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual); *Pine v. Seally*, No. 9:09-CV-1198, 2011 WL 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("the law is . . . clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials") (citing *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008)).  Plaintiff fails to state a claim in this regard.

In light of the foregoing, plaintiff's claims that his ability to file grievances was impeded, he was denied access to the courts, or he was denied an adequate investigation of his grievances and complaints are dismissed in their entirety.  Moreover, since these are the only claims against defendants Gregory and White, they are dismissed as defendants to this action.

### 3.  Verbal Harassment or Threats

Plaintiff alleges that the defendants Caron and Travers verbally harassed or threatened him.  Compl. at  6,11.  Verbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under § 1983.  *See Purcell v. Coughlin*,

15

790 F.2d 263, 265 (2d Cir. 1986) (per curiam); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983") (quotation omitted); *see also Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (collecting cases).  Plaintiff has failed to state a claim against defendants Travers and Caron in this regard.

### 4.  Defendant Lamica

Plaintiff alleges that correctional officer Lamica operated the hand-held video-camera and filmed the incident at plaintiff's cell on December 10, 2010, when plaintiff refused to remove his arm from his cell hatch.  Compl. at 4.  Even if accepted as true, this allegation fails to state a claim of constitutional dimension.  Defendant Lamica is therefore dismissed.

### 5.  Defendant Oropallo

Plaintiff alleges that he notified Sergeant Oropallo about staff misconduct.  Compl. at 15-16.  Even if accepted as true, this allegation fails to state a claim of constitutional dimension.  Defendant Oropallo is therefore dismissed.

### 6.  Defendants Gokey and Dobbins

Plaintiff  alleges that defendants Gokey and Dobbins escorted him from the infirmary to his cell the day after he was assaulted, and that both of them noticed plaintiff's injuries but failed to assist him or to report their suspicion that plaintiff had been assaulted.  *Id.* at 11.  Plaintiff has failed to allege wrongdoing against these defendants.  In fact, plaintiff himself states that Gokey and Dobbins told plaintiff that nurse Travers wanted to see plaintiff when he returned to his cell, therefore there would be no need for them to call for medical

assistance.

### 7. Personal Involvement

To state a viable claim under Section 1983, a plaintiff must allege that the defendant, while acting under color of state law, deprived him of a right, privilege or immunity secured by the Constitution or by the laws of the United States. *See* 42 U.S.C. § 1983. Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Any complaint that fails to allege personal involvement is "fatally defective on its face." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987) (internal quotations and citations omitted).

A supervisor cannot be liable for damages under Section 1983 solely by virtue of being a supervisor; there is no respondeat superior liability under section 1983. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability. *Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009) ("To the extent that [a] complaint attempts to assert a failure-to-supervise claim . . . [that claim is insufficient where] it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights."). Culpability on

17

the part of a supervisory official for a civil rights violation can, however, be established in one of several ways, including when that individual (1) has directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, has failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986).

The complaint mentions defendants Richard Rakoce and T. Zerniak in the caption of the complaint and in the section of the complaint wherein he lists and identifies the defendants, but the body of the complaint alleges no act or omission by Rakoce or Zeniak.[4] Where a person is listed as a defendant, but the body of the complaint fails to indicate what the defendant did to the plaintiff, dismissal is appropriate. *Gonzalez v. City of N.Y.*, No. 97 CIV. 2246, 1998 WL 382055, at *2 (S.D.N.Y. Jul. 9, 1998); *see also Crown v. Wagenstein*, No. 96 CIV. 3895, 1998 WL 118169, at *1 (S.D.N.Y. Mar. 16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York*, 953 F. Supp. 95, 99 (S.D.N.Y.1997) (same).

Additionally, the complaint does not allege the personal involvement of defendant Roy, Fischer, John Doe #1, John Doe # 2, or Bellany in any wrongdoing. Construing the complaint liberally, plaintiff's theory of liability against these defendants appears to be grounded simply upon the fact that they are supervisors, claiming in wholly conclusory fashion that they

---

[4] Zerniak is included in plaintiff's "Prayer for Relief." Compl. at 25. This does not overcome the stated deficiency, namely that the complaint alleges no wrongdoing by Zerniak.

18

exhibited "deliberate indifference" to the staff misconduct alleged in plaintiff's complaint. Compl. at 22.  However, as already mentioned above, Section 1983 damages will not be imposed based upon a respondeat superior theory of liability.  *See Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) ("Dismissal of a § 1983 claim is proper where, as here, the plaintiff does no more that allege that [defendant] was in charge of the prison.") (internal quotations omitted); *see also Castillo v. Commissioner New York State DOCS,* No. 06-CV-858A, 2008 WL 4501881, at *2 (W.D.N.Y. Sept. 30, 2008) (dismissing claims for failure to allege personal involvement, since "[p]laintiff's theory of liability appears to be grounded simply upon the fact that the defendants were in charge of the prison"); *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam ) ("[P]laintiff's claim for monetary damages against [prison officials] requires a showing of more than the linkage in the prison chain of command.").  Thus, plaintiff has failed to allege the personal involvement of defendants Roy, Fischer, John Doe #1, or John Doe # 2 in any wrongdoing.[5]

### 8.  Conspiracy

A conspiracy claim under 42 U.S.C. 1983 must allege that: (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff and (2) an overt act was committed in furtherance of that goal.  *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002).  Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed.  *Ciambriello*, 292 F.3d at 325; *see also Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional

---

[5]  Plaintiff seems to allege that Bellamy impeded his ability to file grievances, or did not fully investigate them.  These claims have been dismissed.  *See* Part II.D.2, *supra*.

rights cannot withstand a motion to dismiss."); *Brown v. City of Oneonta,* 106 F.3d 1125, 1133 (2d  Cir. 1997) (complaints containing only conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief). "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be 'enough to raise a right to relief above the speculative level.'" *Flores v. Levy*, No. 07-CV-3753, 2008 WL 4394681, at *9 (E.D.N.Y. Sep. 23, 2008) (*quoting Twombly*, 550 U.S. at 554).

Here, plaintiff does not assert any facts giving rise to a conspiracy, but instead makes only a vague statement that the defendants who allegedly assaulted him conspired with all of the administrative officials to violate his constitutional rights, and to violate state laws and regulations. *Id.* at 11-12.  Plaintiff has not alleged that any meeting of the minds occurred between any of the defendants and the complaint contains no allegations whatsoever to support a "plausible" conspiracy claim involving any of the defendants.

### 9.  Conclusion

The following claims and defendants are dismissed with prejudice:  (1) plaintiff's claim that defendants Bellamy, Fischer, Gregory, Rock, and White impeded his ability to file grievances; (2) plaintiff's denial-of-access-to-the-courts claim based upon interference with his grievances; (3) plaintiff's claim that defendants failed to adequately investigate alleged misconduct; (4) plaintiff's claims that he was verbally harassed and threatened; and (5) defendants Gregory and White.

The following claims and defendants are dismissed without prejudice:  (1) plaintiff's failure-to-protect claims against defendants LaBarr, King, Clintsman, Sergeant Hebert, Lt. Caron, John Doe - Z,  Rock, Uhler, Lira, and Otis, Smith and Rushford; (2) plaintiff's

conspiracy claims; and (3) defendants LaBarr, Clintsman, Hebert, John Doe - Z, Lira, Otis,

Bellamy, Fischer, Lamica, Oropallo, Dobbins, Gokey, Rakoce, Zerniak, Roy, John Doe # 1,

and John Doe # 2.

Mindful of the requirement to liberally construe pro se pleadings, *see Sealed Plaintiff*

*v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that the complaint

alleges enough to warrant a responsive pleading to the following claims by the designated

defendants:  (1) plaintiff's Eighth Amendment excessive force claims against defendants

Caron, Clark, Stockwell, Richards, Conto, LeClair, Sisto, Dishaw, Carr, King,  and Fournier

and (2) plaintiff's medical indifference claims against defendants Smith, Rushford, Travers,

Lashway, Rock, and Uhler.  However, this is not a ruling on the merits and the court draws

no conclusions about the truth of plaintiff's allegations or about the strength of evidence he

might offer to corroborate them.

### E.    Amended Complaints and Motions to Amend

After plaintiff submitted his complaint, he submitted several amended complaints (Dkt.

Nos. 12, 22, 26) as well as several motions to amend (Dkt. Nos. 7, 23, 28).  The amended

complaints and the motions to amend suffer from the same infirmity discussed below.

An amended complaint is intended to replace and supercede in its entirety the

previous complaint.  Once accepted for filing, the amended complaint becomes the operative

pleading, and the original complaint is no longer considered.  *See Dluhos v. Floating &*

*Abandoned Vessel*, 162 F.3d 63, 68 (2d Cir. 1998) ("[I]t is well established that an amended

complaint ordinarily supersedes the original, and renders it of no legal effect.") (citing *Shields*

*v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).  This requirement is buttressed

by the Local Rules of Practice of this District ("Local Rules"), which provide, in pertinent part,

that amended pleadings must be complete pleadings which will supersede the original pleading in all respects. *See* N.D.N.Y.L.R. 7.1(a)(4). The Court's rules further state that a "party shall not incorporate any portion of its prior pleading into the proposed amended pleading by reference." *Id.* One of the purposes of the requirement that an amended complaint be itself a complete pleading, is to ensure that all of the allegations asserted against the defendants are contained in a single document, thereby reducing the likelihood that a party will overlook one or more allegations against him. This requirement eliminates the confusing nature of "piecemeal" amended complaints. *See Chapdelaine v. Keller*, 9:95-CV-1126 (HGM/GS), 1999 WL 34998130, at *1 (N.D.N.Y. Sep. 28, 1999). In other words, an amended complaint must include all of the allegations against each of the defendants against whom the case is going forward so that the amended complaint may stand alone as the sole complaint in the action.

Here, none of plaintiff's amended complaints[6] or his proposed amended pleadings submitted with his motions to amend are complete pleadings. Indeed, it does not appear that plaintiff intends to replace his original complaint with any of the amended complaints. As explained above, plaintiff may not submit an amended complaint and at the same time proceed with the original complaint. Based upon the foregoing, the Clerk is directed to strike plaintiff's amended complaints (Dkt. Nos. 12, 22, 26) from the docket report because they are not complete pleadings. Plaintiff is advised that the amended complaints will not be considered by the Court. Additionally, because plaintiff has not included a complete proposed amended pleading with any of his motions to amend, those motions to amend (Dkt.

---

[6] While some of the amended complaints appear at first glance to be plaintiff's attempt to commence a new action against new defendants, the Court did not construe them as such because plaintiff clearly identified the submissions as amended complaints to be filed in this action. *See* Dkt. No. 12 at 1, 2, 14; Dkt. No. 22 at 1; Dkt. No. 21-1 at 1; and Dkt. No. 26 at 1.

Nos. 7, 23, 28) are denied without prejudice.

      **F.**    **Motions for Preliminary Injunctive Relief**

      A preliminary injunction is an "extraordinary remedy that should not be granted as a routine matter." *Patton v. Dole*, 806 F.2d 24, 28 (2d Cir. 1986). "The purpose of issuing a preliminary injunction is to 'preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the . . . merits.'" *Candelaria v. Baker*, No. 00-CV-0912E, 2006 WL 618576, at *3 (W.D.N.Y. Mar. 10, 2006) (*quoting Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam)). In most cases, to warrant the issuance of a preliminary injunction, a movant must show (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits, and a balance of hardships tipping decidedly in favor of the moving party. *No Spray Coalition, Inc. v. City of New York*, 252 F.3d 148, 150 (2d Cir. 2001) (per curiam); *Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992). When, however, a movant seeks relief which will alter, rather than maintain, the status quo, or which will provide him with substantially all the relief he seeks, the injunction sought is properly characterized as mandatory rather than prohibitory and the movant must make a "clear" or "substantial" showing of the likelihood of success as well as irreparable harm if the court does not grant the injunctive relief. *See Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996). The same standards used to review a request for a preliminary injunction govern consideration of an application for a temporary restraining order. *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992); *Perri v. Bloomberg*, No. 06-CV-403, 2008 WL 2944642, at * 2 (E.D.N.Y. Jul. 31, 2008). Preliminary injunctive relief "'should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Moore v. Consol. Edison Co.*

*of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (*quoting Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).  The district court has wide discretion in determining whether to grant a preliminary injunction.  *Moore*, 409 F.3d at 511.

"The Second Circuit has defined 'irreparable harm' as 'certain and imminent harm for which a monetary award does not adequately compensate,' noting that 'only harm shown to be non-compensable in terms of money damages provides the basis for awarding injunctive relief.'"  *Perri*, 2008 WL 2944642, at * 2 (citing *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 113-14 (2d Cir. 2003)); *see also Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) ("To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." (internal quotation omitted)).  Speculative, remote or future injury is not the province of injunctive relief.  *Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983); *see also Hooks v. Howard*, No. 9:07-CV-0724 (RFT), 2008 WL 2705371, at *2 (N.D.N.Y. Jul. 3, 2008) ("Irreparable harm must be shown to be imminent, not remote or speculative, and the injury must be such that it cannot be fully remedied by monetary damages.").

Plaintiff has filed several submissions seeking preliminary injunctive relief.  Dkt. Nos. 2, 11; *see also* Dkt. Nos. 5, 6, 9, 10, 13-15, 25, 30 (submissions in support of requests for preliminary injunctive relief).  Construed liberally, plaintiff appears to request a court order enjoining the defendants from any future violation of plaintiff's constitutional rights.  Dkt. Nos. 2, 5.  In support of his motions, plaintiff refers the Court to his complaint, and also attaches a series of letters to David Rock, the Superintendent of Upstate C.F., outlining alleged wrongdoing against plaintiff by various staff at Upstate C.F., and requesting Rock's

assistance.[7]  Dkt. No. 2 at 1-16; Dkt. No. 11.  In a supplemental submission, plaintiff claims that his life is in danger at Upstate C.F., and requests that he be transferred to a different correctional facility and placed in protective custody.  Dkt. No. 5 at 1-5.

Construing plaintiff's requests for preliminary injunctive relief liberally, plaintiff may allege violations of his constitutional rights.  Because an alleged violation of a constitutional right "triggers a finding of irreparable harm," the Court **will assume for purposes of this motion only** that plaintiff satisfies the requirement that a party applying for a preliminary injunction show irreparable harm.  *Jolly*, 76 F.3d at 482; *see also Statharos v. New York City Taxi and Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999) ("Because plaintiffs allege deprivation of a constitutional right, no separate showing of irreparable harm is necessary.").

A party is not entitled to preliminary injunctive relief unless there is also proof of a likelihood of succeeding on the merits of a claim, or evidence that establishes sufficiently serious questions going to the merits of such a claim and a balance of hardships tipping decidedly toward the party seeking such relief.  *See Covino,* 967 F.2d at 77.  In support of his requests, plaintiff has submitted a series of letters to Superintendent Rock outlining alleged wrongdoing against plaintiff and describing relief that he seeks (Dkt. No. 2), and affidavits of two inmates apparently in support of some of his claims (Dkt. No. 15 at 16-17; Dkt. No. 25 at 4-6.  Plaintiff also argues that the allegations in his complaint support his requests for preliminary injunctive relief.[8]  The Court has reviewed plaintiff's motion papers thoroughly and

---

[7]  At the top of each letter addressed to Superintendent Rock, plaintiff has indicated that he is requesting "Judicial Intervention."  Dkt. No. 2 at 1, 10, 14.

[8]  To the extent that he relies on his complaint, plaintiff's allegations, standing alone, are not sufficient to entitle him to preliminary injunctive relief.  *See Ivy Mar Co. v. C.R. Seasons Ltd.,* 907 F. Supp. 547, 561 (E.D.N.Y. 1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Resources, Inc.,* 792 F. Supp. 924, 928 (S.D.N.Y. 1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals.").

considered the claims asserted therein in the light most favorable to plaintiff, as a pro se

litigant.  Based upon that review, and despite assuming, for the purposes of his motions, that

plaintiff has alleged imminent danger, the Court finds that his motions for preliminary

injunctive relief (in any of the forms requested) must be denied.  Plaintiff has failed to submit

proof or evidence establishing a likelihood of success on the merits, or showing any

particular hardship necessitating immediate action by the Court.  *See Moore*, 409 F.3d at

510.

 To the extent that plaintiff appears to seek injunctive relief against persons who are

not parties to this in this action (i.e., non-defendants), the Court lacks subject matter

jurisdiction to enjoin their actions.  *See Stewart v. United States I.N.S.*, 762 F.2d 193, 198-99

(2d Cir. 1985) (preliminary injunctive relief may be obtained "[o]nly after an action has been

commenced"); *Williams v. State University of New York*, 635 F. Supp. 1243, 1246 (E.D.N.Y.

1986) ("prior to the filing of a complaint a court lacks subject matter jurisdiction and is

powerless to grant preliminary injunctive relief"); *In re Rationis Enterprises, Inc. of Panama*,

261 F.3d 264, 270 (2d Cir. 2001) ("A court may not grant a final, or even an interlocutory,

injunction over a party over whom it does not have personal jurisdiction.") (citation omitted).

Consequently, plaintiff is not entitled to injunctive relief against persons who are not parties to

this action.

 Finally, the law is clear that an inmate does not have a right to be confined to the

prison of his own choosing or to a particular type of housing.  *See Olim v. Wakinekona*, 461

U.S. 238, 245 (1983) (inmates have no right to be confined in a particular state or particular

prison within a given state); *Montayne v. Haymes*, 427 U.S. 236, 243 (1976) (New York state

prisoners have no right to incarceration at a particular prison facility); *Klos v. Haskell*, 835 F.

Supp. 710, 723 (W.D.N.Y. 1993), aff'd, 48 F.3d 81 (2d Cir. 1995) (citing cases).  Moreover, DOCCS has "broad leeway in deciding where to house the inmates under its protective care."  *McFadden v. Solfaro*, Nos. 95 Civ. 1148, 95 Civ. 3790, 1998 WL 199923, at *10 (S.D.N.Y. Apr. 23, 1998); *see also Meachum v. Fano*, 427 U.S. 215, 229 (1976) ("The federal courts do not sit to supervise state prisons, the administration of which is acute interest to the states").  Thus, there is no legal basis for this Court to order plaintiff's transfer to another correctional facility or to protective custody.

Plaintiff's motions for preliminary injunctive relief are denied.

### G.      Motion for Default Judgment

Plaintiff's request for entry of default judgment (Dkt. No. 16) because there has been no default.  To date, no defendant has been served with process.

### H.      Motion for Various Relief

Plaintiff asks for a teleconference to address requests for recusal, a change of venue, and preliminary injunctive relief.  Dkt. No. 27.  Plaintiff's request for a teleconference is denied as premature.  Defendants have yet to be served or issue joined.  Additionally, there is no need for a teleconference to address his motions for preliminary injunctive relief, as those motions have been denied.  *See* Part II.F., *supra.*

Turning to plaintiff's request for recusal, a federal judge must recuse himself in any proceeding where "his impartiality might reasonably be questioned [or] he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . ."  *See* 28 U.S.C. § 455.  In cases where a judge's impartiality might reasonably be questioned, the issue for consideration is not whether the judge is in fact subjectively biased, but whether the objective facts suggest prejudice.  *See Liteky v. United*

*States*, 510 U.S. 540, 548 (1994).  The ultimate inquiry is whether "a reasonable person, knowing all the facts, [would] conclude that the trial judge's impartiality could reasonably be questioned."  *Hughes v. City of Albany*, 33 F. Supp. 2d 152, 153 (N.D.N.Y.) (Kahn, J.) (*quoting United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992)), *aff'd*, 189 F.3d 461 (2d Cir. 1999).  However, a judge "is as much obliged not to recuse himself when it is not called for as he is obliged when it is."  *Drexel*, 861 F.2d at 1312 (citing *In re Union Leader Corp.*, 292 F.2d 381, 391 (1st Cir.), *cert. denied*, 368 U.S. 927 (1961)).

Plaintiff moves for recusal claiming that the Court has exhibited bias in delaying the review of his complaint and requests for preliminary injunctive relief.  Dkt. No. 27 at 2.  Plaintiff has not asserted any ground for recusal.  Here, the undersigned has no personal bias against plaintiff or interest in this litigation.  Moreover, plaintiff has not presented any objectively reliable facts that even suggest that the undersigned has been biased.  To the extent that plaintiff is unhappy with the speed in which his action has been processed, the delay is in large part due to the very extensive and frequent filings by plaintiff himself, the review of which necessarily slows the review of plaintiff's action.  Plaintiff's motion for recusal (Dkt. No. 27) is denied.

Plaintiff may also request change of venue.  Dkt. No. 27 at 2.  This request is also denied.

III.    **CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's IFP Application (Dkt. No. 3) is **GRANTED**.  The Clerk shall provide the Superintendent of the facility that plaintiff has designated as his current location

with a copy of plaintiff's inmate authorization form (Dkt. No. 4) and notify that official that plaintiff has filed this action and is required to pay to the Northern District of New York the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the following defendants and claims are **DISMISSED with prejudice** for the reasons set forth above:  (1) plaintiff's claim that defendants Bellamy, Fischer, Gregory, Rock, and White impeded his ability to file grievances; (2) plaintiff's denial-of-access-to-the-courts claim based upon interference with his grievances; (3) plaintiff's claim that defendants failed to adequately investigate alleged misconduct; (4) plaintiff's claims that he was verbally harassed and threatened; and (5) defendants Gregory and White; and it is further

**ORDERED** that the following defendants and claims are **DISMISSED without prejudice** for the reasons set forth above:  (1) plaintiff's failure-to-protect claims against defendants LaBarr, King, Clintsman, Sergeant Hebert, Lt. Caron, John Doe - Z, Rock, Uhler, Lira, Otis, Smith and Rushford; (2) plaintiff's conspiracy claims; and (3) defendants LaBarr, Clintsman, Hebert, John Doe - Z, Lira, Otis, Bellamy, Fischer, Lamica, Oropallo, Dobbins, Gokey, Rakoce, Zerniak, Roy, John Doe # 1, and John Doe # 2; and it is further

**ORDERED** that the Clerk shall issue summonses and forward them, along with copies of the complaint, to the United States Marshal for service upon the remaining defendants -- namely Caron, Clark, Stockwell, Richards, Conto, LeClair, Sisto, Dishaw, Carr, King,

29

Fournier, Smith, Rushford, Travers, Lashway, Rock, and Uhler;[9] and it is further

**ORDERED** that a response to the complaint be filed by defendants Caron, Clark, Stockwell, Richards, Conto, LeClair, Sisto, Dishaw, Carr, King, Fournier, Smith, Rushford, Travers, Lashway, Rock, and Uhler, or their counsel as provided for in the Federal Rules of Civil Procedure after service of process on the defendants; and it is further

**ORDERED** that the Clerk strike from the docket report the amended complaints (Dkt. Nos. 12, 22, 26) for the reasons set forth above; and it is further

**ORDERED** that plaintiff's motions to amend (Dkt. Nos. 7, 23, 28) are **DENIED without prejudice**; and it is further

**ORDERED** that plaintiff's motions for preliminary injunctive relief (Dkt. Nos. 2, 11) are **DENIED**; and it is further

**ORDERED** that plaintiff's motion for default judgment (Dkt. No. 16) is **DENIED**; and it is further

**ORDERED** that plaintiff's motion for various relief, including a hearing and recusal (Dkt. No. 27) is **DENIED** in its entirety; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel.  Any document received by the Clerk or the Court which does not include a**

---

[9] The only remaining defendants are Caron, Clark, Stockwell, Richards, Conto, LeClair, Sisto, Dishaw, Carr, King, Fournier, Smith, Rushford, Travers, Lashway, Rock, and Uhler.  All other defendants are dismissed.

**proper certificate of service will be stricken from the docket.**  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; plaintiff's failure to do so will result in the dismissal of this action**; and it is further

ORDERED, that the Clerk shall serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

DATED:  November 20, 2012

Syracuse, NY

Honorable Norman A. Mordue
U.S. District Judge

31