**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JOHN WHITE,

                              Plaintiff,

            - v -                                          Civ. No. 9:12-CV-986
                                                                    (NAM/DJS)
JEFFREY CLARK, *et al*.,

                              Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

JOHN H WHITE
Plaintiff, *Pro Se*
08-A-3366
Upstate Correctional Facility
P.O. Box 2001
Malone, New York 12953

HON. ERIC T. SCHNEIDERMAN                     JOHN F. MOORE, ESQ.
Attorney General of the State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff John White brings this civil rights action, pursuant to 42 U.S.C. §

1983, alleging that various Defendants violently assaulted him on two separate occasions on

December 1, 2010, and that thereafter, medical staff and supervisory staff at the Upstate

Correctional Facility were deliberately indifferent to his serious medical needs, all in

violation of his First, Eighth, and Fourteenth Amendment rights under the United States

Constitution. Dkt. No. 1, Compl., at pp. 17-22.[1]

Currently pending before this Court is Defendants' Motion for Summary Judgment, filed pursuant to Federal Rule of Civil Procedure 56(a). Dkt. No. 314. The basic premise upon which Defendants' Motion is predicated is two-fold: (1) that Plaintiff failed to exhaust available administrative remedies prior to bringing this action, and (2) that the claims of medical indifference against the medical staff and supervisory personnel are legally insufficient, or alternatively, the Defendants are entitled to qualified immunity. *Id.* Plaintiff opposes the Motion. Dkt. Nos. 342–46, 347, & 350.[2] For the reasons that follow, the Court recommends **granting** the Motion as to the Eighth Amendment medical indifference claims, **granting** the Motion to dismiss any claim for damages against the Defendants in their official capacities, and **denying** the remaining aspects of the Motion so that an exhaustion hearing can immediately be held.

## I. BACKGROUND

In general terms, Plaintiff alleges that on December 1, 2010, he had what he believed was a legitimate dispute with his cell mate and felt that, rather than engage in a fight, he would attempt to gain attention by notifying the authorities that he was suicidal. Compl. at pp. 5-8; Dkt. No. 314-4, Dep. Tr. of John White [hereinafter "White Dep."], dated Mar. 12, 2015, at pp. 8-9. Plaintiff was then taken to the infirmary for observation consistent with this

---

[1] Due the length of the paragraphs, citations to the Complaint refer to the page number printed by Plaintiff on the top of each page of the twenty-eight paged Complaint.

[2] Plaintiff also asks the Court to consider documents he filed in another civil action in this Court. Dkt. No. 347.

threat of self-harm.  Compl. at pp. 7-8; White Dep. at p. 10.  According to the Plaintiff, he was advised by Lieutenant Caron that because he gave his officers a hard time, he would be getting his "ass kicked" later that night.  White Dep. at p. 27.

Approximately thirty to forty minutes later, six corrections officers entered the infirmary room and allegedly assaulted Plaintiff for a period of approximately fifteen minutes.  Compl. at p. 8; White Dep. at p. 40.  Plaintiff identifies those six officers as Officers Jeffrey Clark, Shawn Conto, Michael Sisto, Brian LeClair, R. Richards, and John Stockwell.  Compl. at p. 8.  Plaintiff alleges that pursuant to the specific directive of Officer Clark, Plaintiff was not struck in the face but was hit in other areas, including his leg and his right heel.  White Dep. at pp. 40-45.  Plaintiff asked for medical attention, but it was denied.  Compl. at p. 9; White Dep. at p. 58.  Plaintiff was allegedly told that if he continued to write grievances, he would be beaten again.  White Dep. at p. 56.  Inexplicably, after the assault Plaintiff shook hands with Defendant Clark, who stated to Plaintiff: "You're all right with me.  I can't control what nobody else does[.]"  *Id* at pp. 65-67.

Approximately twenty to thirty minutes later a second assault allegedly occurred at the same location, this time involving Officers Joey Dishaw, Michael Carr, Brian Fournier, and Chris King.  Compl. at p. 10; White Dep. at pp. 69-70.  Again it is alleged that Officer Clark directed that Plaintiff was not to be hit in the face.  Compl. at p. 10; White Dep. at p. 80.  That assault continued for less than fifteen minutes until Officer Clark yelled for it to stop.  White Dep. at pp. 83 & 87.  Plaintiff alleges that he was choked during the entire assault.  *Id*. at pp. 93-94.  Again, after the event, Plaintiff offered to shake the Defendants'

hands. *Id*. at pp. 96-97.

With regard to injuries, Plaintiff does not recall if he was bleeding, White Dep. at pp. 44 & 95, but alleges that he was limping and was swollen, White Dep. at pp. 96, 99, & 104 ("It looked like I had pillows . . . . cotton candy up under my skin in certain areas."). While Plaintiff acknowledges that he received a certain minimal level of medical care in response to his numerous requests, he nevertheless maintains that the medical staff were deliberately indifferent to his serious medical needs. *Id*. at pp. 109-30.

## II. PROCEDURAL HISTORY

On November 20, 2012, the Honorable Norman A. Mordue, now-Senior United States District Judge, issued an extensive Decision and Order after his initial screening of the Plaintiff's Complaint. Dkt. No. 37. As part of that Decision, Judge Mordue dismissed various claims, including Plaintiff's claims for 1) interference with his ability to file grievances; 2) denial-of-access-to-the-court; 3) verbal harassment and threats; 4) failure-to-protect against certain specified Defendants; and 5) conspiracy; Judge Mordue also dismissed all claims against Defendants Gregory, White, LaBarr, Clintsmon; Hebert, John Doe-Z, Lira, Otis, Bellamy, Fischer, Lamica, Oropallo, Dobbins, Gokey, Rakoce, Zerniak, Roy, and John Does #1 and #2. *Id*. at p. 29. Service on the remaining Defendants, namely, Caron, Clark, Stockwell, Richards, Conto, LeClair, Sisto, Dishaw, Carr, King, Fournier, Smith, Rushford, Travers, Lashway, Rock, and Uhler was directed with the following claims surviving:

1) Defendants Clark, Stockwell, Richards, Canto, LeClair, Sisto, Dishaw, Carr,

King, and Fournier, at the direction of Lieutenant Caron, subjected Plaintiff to

excessive force in violation of the Eighth Amendment; and

2) Defendants Smith[3], Rushford, Travers, Lashway, Rock, and Uhler denied

Plaintiff medical care in deliberate indifference to his serious medical needs.

In moving for summary judgment, Defendants do not argue that summary judgment is an appropriate vehicle to resolve the physical confrontation that Plaintiff alleges occurred between himself and the numerous corrections officers. Rather, Defendants argue that dismissal is appropriate simply because Plaintiff has not exhausted his administrative remedies prior to initiating this law suit. Defendants also contend that the uncontested, material facts do not set forth a cognizable medical deliberate indifference claim, and in any event, that the Defendants implicated in the medical indifference claim are entitled to qualified immunity. And finally, Defendants contend that the damage claims against them in their official capacities are not cognizable. *Id*.

## III. DISCUSSION

### A. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*,

---

[3] Later in the litigation, Plaintiff moved to voluntarily dismiss his claims against Defendant Smith. Dkt. No. 143. The Court granted this request and Ms. Smith was dismissed without prejudice. Dkt. No. 187.

34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task

at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## B. The Rule 7.1 Statement of Material Facts

As part of their Motion packet, Defendants filed a Statement of Material Facts in accordance with N.D.N.Y.L.R. 7.1. Dkt. No. 314-13. The Plaintiff's Response to the 7.1 Statement was not in proper form, in many instances did not directly respond to the factual assertions of the Defendants, and did not cite to appropriate portions the record. For example:

| Defs.' 7.1 Statement (Dkt. No. 314-13) | Pl.'s Resp. (Dkt. No. 342-1) |
|---|---|
| ¶ 6. Records indicate that Plaintiff slept well in the evening of 12/10, and Nurse Cook, defendant herein, noted that he made no complaints of discomfort during the AM medical rounds when offered at Nursing Sick Call ("NSC). | ¶6. Plaintiff hereby makes known that he objects to counsel's conduct & defendants['] conduct & asserts that all previously described actions by defendants inside the complaint & deposition as authored by plaintiff are true & need not be reiterated due to time constraints. |
| ¶ 8. On December 4, 2010, [P]laintiff complained of general aches and pains, but no other complaints, and received 4 packets of Tylenol. | ¶ 8. See, Compl. # 12-CV-986, at pg. 9-28 [Assiduous Review]. |
| ¶ 12. When seen on NSC on December 9, 2010, Defendant Rushford noted Plaintiff complained of "generalized pain" for which he was again issued 4 packets of Tylenol. | ¶ 12. Plaintiff's pain & suffering resulted in his submissions of virtually[] daily sickcall forms for the remaining (5) years housed at Upstate Correctional Facility by simply sliding the request form into the wedge of door for collection by nurses at evening rounds, for request to [be] answered the next day by a unit nurse. Plaintiff's records consist inconsistent amounts of request form[s] answered during each month; i.e., for instance, in the remaining month of December 2010[,] only eleven requests were answered out of the submitted twenty-nine for aid. |
| ¶ 45. Defendants Rock and Uhler have never been physically present during any of Plaintiff's medical examinations. | [No Response]. |

Under N.D.N.Y.L.R. 7.1(a)(3), any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party. *See also N.Y. State Teamsters Conf. Pen. and Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648 (2d

Cir. 2005) (deeming the assertions in the statement of material facts to be admitted where the non-movant supplied only conclusory denials in its response); FED. R. CIV. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion[.]")  Although a *pro se* litigant is entitled to a liberal construction of his filings, *see Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013), his *pro se* status does not relieve him of his obligation to comply with the relevant procedural rules, *see Edwards v. INS*, 59 F.3d 5, 8-9 (2d Cir. 1995).  Accordingly, and as noted hereafter, the uncontradicted factual statements in the Rule 7.1 Statement are accepted for the purpose of this motion.

### C.  Plaintiff's Alleged Failure to Exhaust

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).  Exhaustion is similarly required even if the prisoner asserts futility as an excuse.  *See Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) (refusing to "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise") (cited in *Marvin v. Goord*, 255 F.3d 40, 43 (2d Cir. 2001)).

Accordingly, the exhaustion requirements apply even where the grievance process does not permit an award of money damages and the prisoner seeks only money damages, provided the grievance tribunal has the authority to take some responsive action. *Thomas v. Wright,* 2002 WL 31309190, at *5 (N.D.N.Y. Oct. 11, 2002) (citing *Booth v. Churner*, 531 U.S. 731, 741 (2001)).

In New York State, the administrative remedies consist of a three-step review process. First, a grievance is submitted to the IGRC, a committee comprised of both inmates and facility employees.[4] N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a)-(b). The IGRC reviews and investigates the formal complaints and then issues a written determination. *Id*. at (b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRCs determination and issues a decision. *Id*. at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Cental Office Review Committee ("CORC") makes the final administrative determination. *Id*. at § 701.5(d). Only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to § 1983 in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

The Second Circuit "has recognized that . . . [while] the PLRA's exhaustion requirement is 'mandatory,' certain caveats apply[.]" *Abney v. McGinnis*, 380 F.3d 663, 667

---

[4] The IGRC is a five-member body consisting of two voting inmates, two voting staff members, and a non-voting chair (who may be an inmate, staff member or volunteer). N.Y. COMP. CODES R. & REGS tit.7, § 701.4(a).

(2d Cir. 2004) (citations and internal quotation marks omitted). "[A] three-part inquiry is appropriate in cases where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA[.]" *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). First, "[d]epending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact 'available' to the prisoner." *Id*. (citing *Abney v. McGinnis*, 380 F.3d at 667). Second, "[t]he court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id*. Third, the Second Circuit has found that "there are certain 'special circumstances' in which . . . the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified." *Giano v. Goord*, 380 F.3d 670, 676 (2d Cir. 2004) (citing *Berry v. Kerik*, 366 F.3d 85, 87-88 (2d Cir. 2004). "The effect of such justification is that, though the administrative remedies are no longer available for reasons of timing or other procedural restrictions, such restrictions cannot serve to keep the plaintiff's suit from proceeding." *Id.*

Exhaustion of administrative remedies is an affirmative defense which must be raised by the defendants. *See Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999). Once raised,

as it clearly was in this case,[5] the Defendants bear the burden of proving that the administrative remedies available to Plaintiff were not exhausted prior to the initiation of this civil action. *Howard v. Goord*, 1999 WL 1288679, at * 3 (E.D.N.Y. Dec. 28, 1999). The party opposing the affirmative defense "may delay the ultimate determination as to its validity until trial by showing that there is a genuine issue of material fact to be determined." *Id.* (citations omitted).

Initially, Plaintiff alleges that on numerous occasions prior to December 1, 2010, he had submitted grievances against some of the officers that allegedly attacked him. Dkt. No. 342-1 at pp. 14 & 27-30.[6] Plaintiff submits that his prior grievances are relevant for several reasons. First, these prior filings form the motivation for the alleged attack upon him by the corrections officers. White Dep. at p. 56 (noting that after one of the excessive force incidents, the officers told him "[y]ou better fucking stop writing grievances or it will be worse than this"). Second, Plaintiff also argues that because he has filed misconduct reports regarding correction officers in the past, he is not required to file any additional claims. Dkt. No. 342-1 at p. 29 (citing *Johnson v. Killian*, 680 F.3d 234 (2d Cir. 2012)).

White stated under oath at his deposition that despite the alleged threats against him, immediately after the December 1, 2010 assault, he in fact did file papers and grievances.

---

[5] *See* Dkt. No. 84 at ¶ 11, Answer to Complaint by Defendants Caron, Clark, Conto, Fournier, King, Lashway, LeClair, Richards, Rock, Rushford, Sisto, Stockwell, Travers, and Uhler; Dkt. No. 107 at ¶ 11, Answer to Complaint by Defendants Carr, Dishaw, and Smith.

[6] The Court references the page numbers automatically assigned by the Court's Case Management Electronic Case Files ("CM/ECF") System for Dkt. No. 342-1, as the filing includes both the Plaintiff's response to Defendants' Rule 7.1 Statement as well as his arguments in opposition to the present Motion.

These initial filings allegedly took place on December 2, 4, 7, and 8. White Dep. at p. 136. Plaintiff claims that he filed grievances not only against the officers who struck him, but also against the medical staff that allegedly failed to treat him. *Id*. at pp. 137-40. Plaintiff claims that after he filed complaints, he received no response and as a result he wrote to the Superintendent, and then finally wrote an appeal to CORC, but never received any response. *Id*. at pp. 134-140.[7]

Defendants maintain that Plaintiff did not exhaust his remedies and should not be excused from that requirement. Defendants note that Plaintiff has never produced copies of the purported grievances he claims to have filed; the facility records show grievances were filed before and after the event for other issues, but none during the operative period of December 2010 and none relating to the use of force or purported medical neglect; and the Court's Docket does not include any grievances Plaintiff claims to have attached to his voluminous filings. Dkt. No. 314-14, Defs.' Mem. of Law, at pp 7-9. Each of the Defendants' arguments, however, hinges on Plaintiff's credibility. *See generally Johnson v. Jones*, 26 F.3d 727 (7th Cir. 1994), *aff'd*, 515 U.S. 304, 307-08 (1995) (material issues of fact existed regarding whether officers were even present at the time of the assault, thus precluding interlocutory appeal). "Credibility determinations . . . are jury functions, not those of a judge[.]" *Anderson v. Liberty Lobby, Inc.,* 477 US 242, 255 (1986); *see also Rule*

---

[7] Mr. White originally asserted a claim for violation of his purported right-of-access to-the-courts due to the Defendants' alleged refusal to respond to his grievances. Compl. at p. 20. As part of the initial screening review, Judge Mordue noted that there was no cognizable independent claim that Plaintiff could assert, but that the alleged interference with the ability to file grievances could constitute an excuse from the exhaustion requirement of the Prison Litigation Reform Act. Dkt. No. 37 at pp. 14-15.

*v. Brine, Inc.* 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."). Defendants argue that in analyzing the exhaustion issue the Court should apply a narrow exception to this general rule as set forth in *Jeffries v. City of New York*, 426 F. 3d 549, 554 (2d Cir. 2005). In that case, the Second Circuit held that "in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete," the court may appropriately conclude at the summary judgment stage that no reasonable jury would credit the Plaintiff's testimony. 426 F. 3d at 554. I find that the *Jeffries* exception is not appropriate here because Plaintiff's statements in the Complaint, at his deposition, and in his Opposition to the Defendants' Motion for Summary Judgment regarding his filing of grievances are not wholly and directly contradictory. In particular, Plaintiff has always maintained that he did exhaust his remedies in this case, and did file appropriate grievances and appeals, but that they were never answered. While the Defendants may or may not by successful in showing that Plaintiff's version of the administrative history is simply not credible, in light of the lack of documentation and records, that conclusion must await the holding of the appropriate hearing.

I therefore find that the Plaintiff has raised a triable issue of fact with regard to whether he in fact filed grievances, or whether special circumstances justified his failure to properly exhaust his administrative remedies. Therefore, I recommend that Defendants' Motion for Summary Judgment on this issue be **denied**, and that the District Court direct an

immediate hearing to resolve the exhaustion issue. *See Messa v. Goord*, 652 F.3d 305 (2d

Cir. 2011).

### D. Plaintiff's Eighth Amendment Claims

In order to state a claim based upon constitutionally inadequate medical treatment, the

Plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate

indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). There

are two elements to a medical deliberate indifference claim. *Smith v. Carpenter,* 316 F.3d

178, 183–84 (2d Cir. 2003). The first element is objective and measures the severity of the

deprivation, while the second element is subjective and ensures that the defendant acted with

a "sufficiently culpable state of mind." *Id* . at 184 (citing, *inter alia, Chance v. Armstrong,*

143 F.3d 698, 702 (2d Cir.1998)).

The objective prong of the standard is satisfied when (a) the prisoner was "actually

deprived of adequate medical care," meaning prison officials acted unreasonably in response

to an inmate health risk under the circumstances, and (b) "the inadequacy in medical care is

sufficiently serious." *Salahuddin v. Goord,* 467 F.3d 263, 279-80 (2d Cir. 2006). If the

"unreasonable care" consists of a failure to provide any treatment, then the court examines

whether the inmate's condition itself is "sufficiently serious." *Smith v. Carpenter*, 316 F.3d

at 185–86 (internal quotation marks omitted). When a prisoner alleges "a temporary delay

or interruption in the provision of otherwise adequate medical treatment," the court must

focus on the seriousness of the particular risk of harm that resulted from the challenged delay

or interruption, "rather than the prisoner's *underlying medical condition* alone[.]" *Id.* at 185

(emphasis in original). "The standard for determining when a deprivation or delay in a prisoner's medical need is sufficiently serious contemplates a condition of urgency that may result in degeneration [of the patient's condition] or extreme pain." *Chance v. Armstrong* 143 F.3d at 702) (internal quotation marks and citations omitted).

The subjective prong of the deliberate indifference test is satisfied when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan,* 511 U.S. 825, 847 (1994). A plaintiff is not required to show that a defendant acted or failed to act "for the very purpose of causing harm or with knowledge that harm will result," but must show that the official was aware of facts from which one could infer that "a substantial risk of serious harm" exists, and that the official drew that inference. *Id.* at 835 & 837. The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she "knew the underlying facts but believed . . . that the risk to which the facts gave rise was insubstantial or nonexistent." *Id.* at 844. Thus, "[t]he defendant's belief that his conduct poses no risk of serious harm . . . need not be sound so long as it is sincere[,]" and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin v. Goord,* 467 F.3d at 281.

Even crediting Plaintiff's version of his injuries, the Court finds that such injuries do not amount to a condition of urgency that may produce death, degeneration, or extreme pain. The Plaintiff's medical condition and treatment are contained in the treatment records provided by the Defendants as part of the Declaration of Nancy Smith, Dkt. Nos. 314-8

through 314-10, and the Defendants' Statement of Material Facts that was, in large measure, not properly disputed, Dkt. No. 314-13 at ¶¶ 5-45. *See also* Dkt. No. 315. Plaintiff was seen by medical professionals, or attempted to be seen and refused treatment, numerous times after the December 1, 2010 incident, including fifteen times in the Month of December alone, and complained of generalized pain for which he was given Tylenol. Smith Decl. at ¶¶ 12-15; Dkt. No. 315, Smith Decl., Ex. A, Bates Stamp Nos. 293-98. He presented no objective evidence that he sustained any cuts, fractures, dislocations, or other objective injuries. *See* Smith Decl. at ¶¶ 11-12; Smith Decl., Ex. A, Bates Stamp Nos. 293-98. On December 13, 2010, Plaintiff complained of foot pain, but it appears that this symptom was related to a wart. Smith Decl. at ¶ 14; Smith Decl., Ex. A, Bates Stamp Nos. 294-96. An examination of the right foot on February 9, 2011, revealed no deformity, swelling, nor discoloration, and Plaintiff was continued on Tylenol. Smith Decl., Ex. A, Bates Stamp No. 292. Between June 3, 2011 and December 1, 2011, Plaintiff had sixty-nine dates of treatment, mostly sick calls, regarding a variety of issues, none of which referenced complaints concerning the beatings that is alleged to have occurred on December 1, 2010. Smith Decl., Ex. A, Bates Stamp Nos. 254-79. While the Plaintiff maintains in his deposition that he had been subsequently advised by a medical care personnel ("a guy named John") that he had a permanent injury or paralysis in his right heel, White Dep. at pp. 114-16, he has not produced any records of such in opposition to the Motion. It should also be noted that Plaintiff had a serious accident prior to his incarceration whereby he was hit by one car, and run over by another, and as a result sustained significant injuries, including a fractured hip, as well as

head and wrist injuries. White Dep. at pp. 119 & 120-21. He states that it is impossible to know if the alleged assault aggravated his old injuries. *Id*. at p. 117.

The Court therefore finds that no serious medical need was presented by Plaintiff that satisfied the objective test of the Eighth Amendment, and therefore dismissal of this claim is appropriate. *See Garcia v. Furnia*, 2014 WL 4685104 (N.D.N.Y. Sept. 19, 2014) (collecting cases and dismissing Eighth Amendment case where plaintiff sustained soreness to his body, a black eye, scrapes and contusions, headache, a loose tooth, a "wobbly" knee, and blurriness in one eye); *Latouche v. Tompkins*, Civ. No. 9:09–CV–308 (NAM/RFT), 2011 WL 1103022, at *14 (N.D.N.Y. Mar. 4, 2011) (Rep't–Rec.) (finding that a 4–5 centimeter bruise, a 2–3 centimeter cut, a scratch on plaintiff's face, and pain from a bump on the right and left sides of his face are not objectively sufficiently serious to support a claim of medical indifference), *adopted*, 2011 WL 1103045 (N.D.N.Y. Mar. 23, 2011); *Dallio v. Hebert*, 678 F. Supp. 2d 35, 44–45 (N.D.N.Y.2009) (holding that two black eyes, bruising in kidney area, kick marks and open lacerations on knees, bruising and red spots on thigh, lacerations on arms and wrists, a headache, and numbness in hands and fingers are not "conditions of urgency that may produce death, degeneration, or extreme pain").

In addition to the failure to establish the objective component, Plaintiff has also failed to raise a question of fact that any Defendant knew that the Plaintiff faced "a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. at 847. Based upon the foregoing, the Court recommends **granting** Defendants' Motion for Summary Judgment with respect to Plaintiff's Eighth

Amendment medical care claim.  And, in light of the above analysis wherein this Court has assessed no Eighth Amendment constitutional violation  occurred, it is unnecessary for me to consider the Defendants' affirmative defense of qualified immunity.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

### E.  Official Capacity Claims

Plaintiff has asserted official capacity claims for money damages under 42 U.S.C. § 1983 against all of the Defendants.  Compl. at p. 3.  Defendants now move to dismiss the official capacity claims based upon Eleventh Amendment immunity grounds.  Defs.' Mem. of Law at pp. 22-23.  The immunity granted the states under "the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state."  *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.,* 466 F.3d 232, 236 (2d Cir. 2006) (citing, *inter alia, Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)).  The Eleventh Amendment bars all money damages claims against state officials acting in their official capacities.  *Kentucky v. Graham,* 473 U.S. 159, 169 (1985). The Eleventh Amendment has been found to bar official capacity claims for money damages against the New York State Department of Corrections and Community Supervision ("DOCCS") officials and parole officers.  *See Tolliver v. New York State Corr. Officers*, 2000 WL 1154311, at * 2 (S.D.N.Y. Aug. 14, 2000) ("All of the defendants in this case are state officials because they are employees of the New York State Department of Correctional

Services."); *James v. Suffolk Cnty. Corr. Facility,* 2014 WL 4659300, at *5 (E.D.N.Y. Sept. 17, 2014) (official capacity claims for money damages against parole officers are barred by the Eleventh Amendment). Therefore, the Court recommends that Plaintiff's § 1983 claims for money damages against Defendants in their official capacities be **dismissed with prejudice** on Eleventh Amendment grounds.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 314) be **granted in part and denied in part** as follows:

1. **Granted** as to Plaintiff's Eighth Amendment medical deliberate indifference claim against Defendants Rushford, Travers, Lashway, Rock, and Uhler, and that these Defendants be dismissed from the action;

2. **Granted** as to the monetary damages claims against the individual Defendants in their official capacities;

3. **Denied** as to Plaintiff's alleged failure to exhaust his administrative remedies upon the grounds that there exist questions of fact that require an exhaustion hearing; and it is further

**ORDERED**, that Plaintiff's Letter-Motion seeking consideration of additional records as filed in Civil Case No. 9:12-CV-1775 in further support of his opposition (Dkt. No. 347) is **granted** to the extent that the Court reviewed the filings but will not require the Clerk of the Court to make it a part of the current Docket as they are not relevant; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: February 11, 2016
Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge